Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS from the Opinion and Award of the Deputy Commissioner the following
FINDINGS OF FACT
1. Plaintiff is a 44-year-old male with four children who became employed by defendant-employer in November 1991.
2. On July 9, 1992, plaintiff, who was employed by defendant-employer as a general warehouse worker, was working as an order puller. An order puller operates a tugger which pulls a detachable 4 wheel float. The bottom of the base of the float stands approximately 10 inches from the ground.
3. The tuggers are operated by the order pullers standing on the tugger which is battery powered. It is the job of the order puller to pull the required boxes of merchandise, pursuant to the order, from the various shelves by placing the required boxes on the float which are then shipped to the various Family Dollar Stores.
4. On July 9, 1992 at approximately 9:35 a.m., Bobby Griffin an order puller was standing beside his float in the center of the warehouse aisle putting a case of merchandise on his float. James Boyd, another order puller, attempted to pass Griffin.
5. The aisles in the warehouse are wide enough for two tuggers with floats attached to pass each other. However, as Boyd was attempting to pass Griffin, his tugger, and his float, the front of the Boyd float hit a stack of pallets loaded with boxes which were sticking out into the aisle. The front of Boyd's float became wedged against some of the boxes causing the rear of the float to swerve and swing toward the middle of the aisle entrapping Griffin's leg between the two floats.
6. Griffin yelled for help and plaintiff, working nearby, went to help Griffin. Boyd also immediately got off his tugger and went to help Griffin.
7. The plaintiff testified that when he first saw Griffin, Griffin had freed his leg from between the two floats and was hopping up and down in pain holding his leg. This is in contrast, with the recorded statement plaintiff gave on August 3, 1992 wherein plaintiff stated that he and Boyd helped move the metal cart off Griffin's leg. Plaintiff further testified that as he was attempting to comfort Griffin, Boyd started the tugger again and attempted to drive it forward causing the float to once again swerve to the center of the aisle, this time trapping plaintiff's left leg. Plaintiff also testified that while still comforting Griffin, he reached down and moved the Boyd float off of his leg.
8. Griffin and Boyd, who also testified at the hearing, corroborated plaintiff's recorded statement of August 3, 1992. However, they deny Boyd attempted to drive the tugger forward or to move the float. They also deny plaintiff's leg became caught in between the two floats.
9. Plaintiff told Boyd to go and get some help. Boyd went an got the supervisor, Bobby Starnes. After Bobby Starnes arrived at the accident site, the float was disconnected from Boyd's tugger and the float holding Griffin was pulled to the Nurse's station.
10. Plaintiff made no report of his leg becoming trapped on or about July 9, 1992 at the time of the incident involving Griffin. After the Griffin incident, plaintiff returned to work and completed his regular work duties. On Friday, July 10, 1992, plaintiff returned to work for defendant-employer, performed his regular duties, and again made no report to defendant-employer of his leg becoming trapped on or about July 9, 1992. This contrasts with both plaintiff's and his girlfriend's testimony at the hearing that on Thursday night there had been a red mark and a bruise on plaintiff's left leg. Furthermore, plaintiff testified that when he took a shower Thursday evening the red area burned when the water and soap touched it. On Saturday, July 11, 1992, plaintiff called defendant-employer and informed his supervisor that he was unable to walk due to a groin injury and would not be able to report to work that day. Again, plaintiff did not report at that time that his leg had become trapped between the two floats when he was attempting to help Griffin.
11. Medical records reveal that plaintiff first sought medical treatment at the emergency room during the early morning hours of July 13, 1992. The admitting nurse's notes state that plaintiff was complaining of pain and swelling in his left leg and that plaintiff denied any trauma to his leg. Later, when the plaintiff was examined by the doctors, plaintiff informed them that he had banged his left leg against a metal cart at his place of employment on Friday, which would have been July 10, 1992, the day after the incident involving Mr. Griffin.
12. Upon his examination of the plaintiff's leg, Dr. Hudson, plaintiff's treating physician, was unable to find any evidence of an obvious break in plaintiff's skin or a bruise. Following further testing and questioning of plaintiff, plaintiff was diagnosed as suffering from cellulitis to his left leg. Cellulitis can occur as the result of trauma, or it can occur in the absence of trauma.
13. As a result of the cellulitis, plaintiff was out of work from July 11, 1992 through August 23, 1992. Plaintiff returned to work for defendant-employer on August 23, 1992. Plaintiff returned to work as a general warehouse employee where he continued to work until he was terminated on September 16, 1992 for reasons unrelated to the alleged injury by accident giving rise hereto. Thereafter, plaintiff became employed by the U.S. Postal Service earning wages better than he was earning during his employment with defendant-employer.
14. Plaintiff's testimony regarding the specifics of the alleged incident of July 9, 1992 is not consistent with his previous recorded statement, and is not corroborated by the other persons who were present at the time of the alleged incident. Additionally, plaintiff failed to report this alleged incident to defendant-employer on Thursday, Friday, or when he called and reported that he was unable to work on Saturday, July 11, 1992. This despite the fact plaintiff testified he had noticed a bruise and a painful red mark on his left leg as early as the evening of July 9, 1992.
15. Based on plaintiff's demeanor and testimony and the testimony and demeanor of the other witnesses in this matter, the Deputy Commissioner found plaintiff's testimony regarding the alleged incident of July 9, 1992 was not credible.
16. Dr. Hudson's testimony includes at least two different means by which plaintiff could have contracted cellulitis.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On July 9, 1992, plaintiff did not sustain an injury by accident to his left leg as a result of an accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's claims, therefore, are not compensable under the provisions of the North Carolina Worker's Compensation Act. N.C. Gen. Stat. § 97-2(6).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. Plaintiff's claim must under the law be and is hereby DENIED.
2. Each side must bear its own costs.
 S/ _____________________ J. RANDOLPH WARD COMMISSIONER
S/ ______________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ ______________________ BERNADINE BALLANCE DEPUTY COMMISSIONER